Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - x
                                :
UNITED STATES OF AMERICA        :
                                :
        - v. -                  :        **INDICTMENT**
                                :
JERRY BROOKS,                   :        08 Cr.
                                :
        Defendant.              :
                                :
                                :
- - - - - - - - - - - - - - x

## COUNTS ONE THROUGH ELEVEN

The Grand Jury charges:

1.    At all times relevant to this Indictment, the
General Services Administration ("GSA") was an agency within the
executive branch of the United States that, among other things,
procured services to be provided by contractors at federal
buildings.

2.    At all times relevant to this Indictment,
Engineering Services Unlimited ("ESU") was a closely-held
corporation owned and operated by JERRY BROOKS, the defendant.

3.    In or about February 2000, GSA entered into a
contract with ESU pursuant to which ESU was to supply security
guards to be posted at various federal buildings on Long Island,
including the United States Courthouse in Central Islip, New
York.

4.    Pursuant to the terms of the contract, ESU was
required to certify to GSA that it had provided each of the
security guards with a minimum number of hours of training in a

variety of areas, such as cardiopulmonary resuscitation, use of force, and firearms safety.

5.    On or about March 22, 2002, JERRY BROOKS, the defendant, submitted forms to GSA in which he certified that the employee named on each form had completed a minimum of 83 hours of training and specifying the precise number of hours that the employee had spent being trained in each individual subject and the date on which the training purportedly took place.  BROOKS signed each form in a space provided for the contractor or his authorized designee to certify that the statements contained on the form were true to the best of his or her knowledge.  Above the certification section, the form warned that false statements regarding the completion of training might be punishable by fine or imprisonment under Title 18, United States Code, Section 1001. After signing the forms, BROOKS caused them to be submitted to GSA officials in Manhattan.

6.    As JERRY BROOKS, the defendant, knew at the time he executed the training reports, the information supplied to GSA in the reports was false in that ESU had not provided the training described therein.

## Statutory Allegations

7.    On or about March 22, 2002, in the Southern District of New York and elsewhere, JERRY BROOKS, the defendant, unlawfully, willfully, and knowingly, in a matter within the jurisdiction of the executive branch of the Government of the

2

United States, to wit, the General Services Administration, did falsify, conceal, and cover up by tricks, schemes, and devices, material facts, and did make materially false, fictitious, and fraudulent statements and representations, and did make and use false writings and documents knowing the same to contain materially false, fictitious, and fraudulent statements and entries, to wit, as the owner and operator of a company hired by GSA to supply trained security guards to be posted at various federal facilities, BROOKS reported to GSA that the security guards identified below had received specific, contractually-required training when, in fact, BROOKS was aware that the security guards had not received the reported training:

| COUNT | DATE | FALSE STATEMENT |
|-------|------|-----------------|
| ONE | March 22, 2002 | Report of Training Completion for Richard Raynor |
| TWO | March 22, 2002 | Report of Training Completion for Gatha Ballard |
| THREE | March 22, 2002 | Report of Training Completion for Luis Rodriguez |
| FOUR | March 22, 2002 | Report of Training Completion for George Lovaglio |
| FIVE | March 22, 2002 | Report of Training Completion for Maro Castellano |
| SIX | March 22, 2002 | Report of Training Completion for Mary McDonough |

3

| SEVEN | March 22, 2002 | Report of Training Completion for Alain Ocampo |
| EIGHT | March 22, 2002 | Report of Training Completion for Michael Carley |
| NINE | March 22, 2002 | Report of Training Completion for Richard Figuero |
| TEN | March 22, 2002 | Report of Training Completion for Christopher Jones |
| ELEVEN | March 22, 2002 | Report of Training Completion for Samuel Murphy |

(Title 18, United States Code, Section 1001.)


FOREPERSON


MICHAEL J. GARCIA
United States Attorney

4

Form No. USA-33a-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v -

JERRY BROOKS,

**Defendant.**

## INDICTMENT

08 Cr.

(Title 18, United States Code,
Section 1001.)

**MICHAEL J. GARCIA**
United States Attorney.

**A TRUE BILL**

_____   01 21 08
Foreperson.

Exhibit B

(e)    Temporary suitability determination allowances may be granted by the Government for a period of six (6) months from the date that such allowance is approved. All contract employees working under GSA security contracts after the expiration of the six (6) temporary clearance without a final suitability or security clearance, will be dismissed from further work until such time as a full suitability determination has been completed. This requirement applies to both classified and nonclassified contracts. Security clearances, when required, will not be waived. The Government will provide the Contractor with the appropriate address where the completed forms are to be forwarded.

E.    **Age**

All contract employees shall be a minimum of twenty-one (21) years of age (age requirements may be waived by the Contracting Officer for veterans of military service and for active duty military personnel).

F.    **Special Requirements for Supervisors**

Supervisors must be individuals of integrity who display a mature attitude and exercise good judgment. Each supervisor shall have a minimum of two (2) years of successful supervisory experience in the security or law enforcement field. However, the Contractor shall have the prerogative of requesting the approval of another employee without two (2) years of supervisory experience if the Contractor can provide sufficient documentation to support his selection. The COR shall recommend the selection, if satisfactory, and the Contracting Officer will approve or reject same. A Key Personnel Résumé (see Part III, Section J, Exhibit 9) shall be completed for each supervisor and a copy shall be provided to the COR.

11.    **Training**

A.    **General**

To be eligible to perform under this contract, each contract employee must meet the following training requirements.

No guard shall be eligible to perform under this contract until he/she takes or retakes the following training and passes the required examinations (tests).

I-C-26

032                                        **499**

examination within a 90-day period. Applicants may retake the
written examination as necessary but shall not be permitted to take
more than three (3) written examinations within a single 90-day
period. The frequency of retesting within any 90-day period, the
retesting schedule, and location of testing shall be determined by the
COR. Employees failing subject examination shall not be permitted to
work under this contract. Any travel incurred by the Contractor, which
may be involved for retesting of contract employees, will be at the
Contractor's expense.

(2)    All written tests and firearm qualification requirements will be
designed and administered by the Government. The written
examination, including firearm safety, will be conducted at a location
determined by the COR. The Contractor shall be responsible for
notifying the COR when his applicants are ready to take the written
and firearms qualification tests.

(3)    The Government will provide, at no cost, one copy of the textbook,
Contract Guard Information Manual, covering the subjects specified in
Part III, Section J, Exhibit 5. The textbook will be provided to the
Contractor with the notice of award of the contract. Additional copies
of the textbook may be purchased from the field sales outlets of the
U.S. Government Printing Office as indicated in Exhibit 11 of this
contract.

(4)    Contract employees who successfully pass the written testing
requirements under this contract may transfer to other GSA guard
contracts having the same requirements. Written examination
qualification under this contract will be valid for a period of five (5)
years. Further information on test procedures and firearms
qualification requirements may be obtained from the COR.

(5)    Firearms, Training/Qualification and Certification (For armed guard
personnel only).

*NOTE: All armed posts require armed supervisors.*

(a)    **Firearms Training.** The Contractor shall provide firearms
training for all armed guards, including supervisors, working
under this contract who do not possess a current state
certification for the state where the services are to be
performed. Firearm qualifications for a state certification must

I-C-28

IFB No. GS-02P-97-CID-0202

(d)    Employee motivation; and

(e)    Proper radio techniques and communication procedures.

(2)    This training shall be provided to all supervisors before they enter on duty. The Contractor shall maintain documentation of this training at the home office and shall forward copies of documents to the COR prior to the employee beginning work under this contract.

J.    **Special Training.** In certain cases, special training given by the tenant agency or by GSA will be required in this contract. The number of hours of training and the posts to which the special requirements apply is specified in Part III, Section J, Exhibit 4 of this contract.

K.    **Alternatives.** Request for alternatives to training requirements must be submitted in writing as shown in Part III, Section J, Exhibit 13, with complete justification and documentation, to the COR. The Contracting Officer may approve alternatives to training requirements (with the exception of the required Government training, weapons training and qualification and the required training test) when it is in the best interest of the Government and approved in written form prior to the guards(s) entrance on duty. Such requests must contain documentation of prior training in the specific subject area contained in Part III, Section J, Exhibit 5, which has been completed within five (5) years of the application, or sufficient documentation of prior experience as a commissioned law enforcement officer.

L.    **Training Requirements by Position.**

(1)    **Unarmed:**        **103 Hours of Basic Training**
                    ♦  20 Hours Government Provided Training
                        (See Part III, Section J, Exhibit 4).
                    ♦  83 Hours Contractor Provided Training
                        (See Part III, Section J, Exhibit 5).

                    **26 Hours of Contractor Provided Refresher Training**[1] (See Part III, Section J, Exhibits 5 and 8C).
                    ♦  9 Hours - Cardiopulmonary Resuscitation*
                        8 Hours - Emergency Medical Assistance (First Aid)
                    ♦  1 Hour - Safety and Fire Prevention
                    ♦  1 Hour - Narcotics and Dangerous Drugs
                    ♦  1 Hour - Search and Seizure

I-C-32

038                              **505**

Exhibit C

# Dr. Jay Billings

1300 Meridian Street
Box 25
Huntsville AL 35801
256 512 5555
jay@dsmc.us

## 1. QUALIFICATIONS

I am a management consultant providing services in Contract Management, Project Management and Quality Management. My clients are primarily small and mid sized contractors who deal primarily in Federal Government contracts. I have been an instructor at the Defense Systems Management College, National Contract Management Association, Nova Southeastern University, Florida Institue of Technology, University of Alabama in Huntsville, and Washington State University. While at the Defense Systems Management College I was ranked in the top level of faculty.

In 1980, I was assigned to the Office of Federal Procurement Policy to assist in the preparation of policy and regulatory guidance. This included supporting the writing of the Federal Acquisition Regulation, changing the Federal OPM policy to increase the professionalism of the procurement career field, and implementation of the Office of Government Ethics policies throughout the Federal workforce. I have provided consulting support to contractors in the areas of performance based and award fee contract management, compliance, and contract administration. I have developed and provided consulting to mid and senior level government and industry managers in the area of program management during the period 1981- present.

I also served as Chief of a Should Cost Analysis Team, a member of many Source Selection Advisory Councils and Evaluation Boards, and have authored dozens of federal procurement related pulications.

### In Summary

- Education
  - BA Lehigh University—1963
  - MBA Alabama A & M University 1975
  - MPA Nova Southeastern University 1978
  - DPA Nova Southeastern University 1979

- Experience
  - Federal Government employee 1964-1995 in Contracting Career Field. (1102) Retired as GM 15 Step 10
    - 15 Years experience in government contract policy
    - 2 years experience SADBUS
    - 9 years experience as director fo DoD Systems Management College Southern Region

Draft
Attorney Client Privilege

1

- Honors

  - Member Department of Defense Acquisition Corps--Level III Project Management and Contract Management
  - Certified Professional Contract Manager # 3243
  - Project Manager Professional # 833
  - Fellow National Contract Management Association
  - Was co-recipient of National Contract Management Association 1995 Education Award
  - ISO 9000 Auditor  #Q 04934
  - Listed in Who's Who in Project Management 1996-1997
  - NCMA Achievement Award, 1998, in recognition for Co-Chair role in NCMA World Congress '98

## 2. SCOPE OF EFFORT:

I have been retained by Jerry L Brooks, President of ESU Incorporated, to provide my opinion on his compliance with the terms of the contract (GS-02P-97-CIP-0202), specifically in regards to the charge of filing false claims as stated in United States v. Jerry Brooks 08Cr._____(RWS).

I have reviewed the following documents in arriving at my opinion
- Contract GS-02P-97-CIP-0202
- The indictment United States v. Jerry Brooks 08 CR.____(RWS)
- The accepted training plan submitted by Mr Brooks to the government
- The letter from Ms. Linda Piela, Contracting Officer dated 8 December 1999. This letter was a notice to proceed effective 1 February 1999
- Training records for the individuals identified in the indictment
- Letters from Mr. Michael L. A. McHugh dated 14 February 2003 terminating the delivery orders, and 17 February 2003 Terminating the Contract for convenience of the Government
- One undated document from the preceding contractor FJC Security Services Inc., showing that some of their employees received On the Job Training (OJT) training as a normal course of business

## 3. SUMMARY:

a. The contract was awarded under Sealed Bid procedures on August 3, 1999. The solicitation had been issued under a restricted solicitation program called the Small Business Set-a-Side process wherein only firms certified as small businesses eligible were allowed to submit sealed bids. ESU was selected as the winner of this solicitation which means that the contracting officer made a determination, as evidenced by the award of the contract, that ESU, Inc. had submitted the lowest technically acceptable, responsive bid and that ESU, Inc. was a responsible contractor.

Draft
Attorney Client Privilege

2

b. The contract required in Section C paragraph 2, that certain actions be completed prior to performance. Sub paragraph F stated that "Requirements for contract guard eligibility, such as fingerprint charts, medical certificates, personnel history statements, successful completion of required testing, and training requirements to include weapon qualifications prior to commencement of work under this contract.

c. Section C, paragraph 11 A. General, states "No guard shall be eligible to perform under this contract until he/she takes or retakes the following training and passes the required examinations (tests).

d. Section C paragraph 11 C Minimum Training Requirements. "The Contractor shall submit evidence that each guard and supervisor has been trained and certified as required in the subject areas outline in Part III, Section J, Exhibits 4 and 5. Sub paragraph (4) states "Contract employees who successfully pass the written testing requirements under this contract may transfer to other GSA guard contracts having the same requirements. Written examination qualification under this contract will be valid for a period of five (5) years. Further information on test procedures and firearms qualification requirements may be obtained from the COR.."

e. Section C paragraph 11 K Alternatives, states the "...The Contracting Officer may approve alternatives to training requirements...when it is in the best interest of the Government and approved in written form prior to the guard(s) entrance on duty.

f. Notice to Proceed Letter dated Dec 8,1999 from Linda H. Piela Contracting Officer. This letter signifies that the Government has accepted the actions of ESU Inc, as being in compliance with the contract requirements. Specifically this indicates acceptance of the submitted training plan.

g. I am advised that the contract options were exercised for three additional years. This further indicates that during that period the performance of ESU Inc., was satisfactory.

> Base Year : February 1, 2000 – January 31, 2001
> (Executed December 1999)
>
> Option 1: February 1, 2001 – January 31, 2002
> (Executed January 2001)
>
> Option 2: February 1, 2002 – January 31, 2003
> (Executed January 2002)
>
> Option 3: February 1, 2003 – January 31, 2004
> (Executed January 2003)

In accordance with the Federal Acquisition Regulation (FAR), when options are exercised the Contracting Officer must document the file with the following:

Draft

Attorney Client Privilege

The contracting officer may exercise options only after determining that --

(1) Funds are available;

(2) The requirement covered by the option fulfills an existing Government need;

(3) The exercise of the option is the most advantageous method of fulfilling the Government's need, price and other factors (see paragraphs (d) and (e) of this section) considered; and

(4) The option was synopsized in accordance with Part 5 unless exempted by 5.202(a)(11) or other appropriate exemptions in 5.202

Actual exercise of the option is a positive determination of responsibility  as stated in FAR 9-105.  Had ESU been deficient in contract performance then a determination of responsibility should not have been made.

### 9.105-2 -- Determinations and Documentation.

(a) Determinations.

(1) **The contracting officer's signing of a contract constitutes a determination that the prospective contractor is responsible with respect to that contract.**

When an offer on which an award would otherwise be made is rejected because the prospective contractor is found to be nonresponsible, the contracting officer shall make, sign, and place in the contract file a determination of nonresponsibility, which shall state the basis for the determination.

(2) If the contracting officer determines and documents that a responsive small business lacks certain elements of responsibility, the contracting officer shall comply with the procedures in Subpart 19.6. When a certificate of competency is issued for a small business concern (see Subpart 19.6), the contracting officer may accept the factors covered by the certificate without further inquiry.

(b) Support documentation. Documents and reports supporting a determination of responsibility or nonresponsibility, including any preaward survey reports and any applicable Certificate of Competency, must be included in the contract file.

Draft
Attorney Client Privilege

4

## Documentation disproving statements in Indictment

| Count | Report of Training | Documentation | Required by Contract |
|-------|--------------------|---------------|----------------------|
| One | Richard Raynor | Exam Record 5/25/01 and certificates of training | Not Required as per Training Plan |
| Two | Gatha Ballard | Exam Record 5/25/01 and certificates of training | Not Required as per Training Plan |
| Three | Luis Rodriguez | Exam Record June 12, 2001 | Not Required as per Training Plan |
| Four | George Lovaglio | Exam Record Feb 13, 2002 and certificates of training | Not Required as per Training Plan |
| Five | Maro Castellano | Exam Record 5/25/01 and certificates of training | Not Required as per Training Plan |
| Six | Mary McDonough | Exam Record 11/14/01 | Not Required as per Training Plan |
| Seven | Alain Ocampo | Exam Record Oct 23, 2001 and certificates of training | Not Required as per Training Plan |
| Eight | Michael Carley | Exam Record Feb 13, 2002 and certificates of training | Not Required as per Training Plan |
| Nine | Richard Figuero | Exam Record 12/18/01 and certificates of training | Not Required as per Training Plan |
| Ten | Christopher Jones | Exam Record 3/14/01 and certificates of training | Not Required as per Training Plan |
| Eleven | Samuel Murphy | Training received from HWA security, needs recertification only | Not Required as per Training Plan |

Draft
Attorney Client Privilege

5

Training Records of Individual NOT identified in the indictment

| Report of Training | Documentation |
| --- | --- |
| John Tartaglia | Report of Training Completion Dated 3/22/2002 |
| Donald Intordonata | Report of Training Completion Dated 3/22/2002 |
| Terry Fulton | Report of Training Completion Dated 3/22/2002 |
| Anthony Froller | Report of Training Completion Dated 3/22/2002 |
| Phillip Faria | Report of Training Completion Dated 3/22/2002 |
| Louis DiBiase | Report of Training Completion Dated 3/22/2002 |
| Louis D'Amato | Report of Training Completion Dated 3/22/2002 |

4. Additional Comment

The Contract was not terminated properly in accordance with the requirement of
FAR Provision 49.601-2 Letter Notice. Mr Brooks was not given an opportunity for
properly terminate the contract, and in my opinion has the right to file a claim under the
Disputes Clause of the contract.

Jay Billings
7 February 2008

Draft
Attorney Client Privilege

Exhibit D

DEC-8 - 1999

Mr. Jerry L. Brooks
ESU, Inc.
2003 Byrd Springs Road
Suite 106
Huntsville, AL   35802

> RE:  Uniformed Armed & Unarmed Guard Service
> At Various Federally Owned & Leased
> Buildings & Spaces in Long Island
> (Suffolk & Nassau Counties)
> Contract #GS02P97CID0202

Dear Mr. Brooks:

You are hereby given Notice to Proceed effective February 1, 1999, for the guard
services on the above contract as per the enclosed Post Hours and Locations Schedule.
You shall perform all services in strict accordance with the terms of the contract and
enclosed Post Hours and Locations Schedule.

Delivery Orders against this contract will be sent to you shortly.

Sincerely,

/S/ Linda H. Piela
    CONTRACTING OFFICER

Linda H. Piela, Contracting Officer
Support Services Branch (2PSSC)
Federal Protective Service

Attachment

NoProceed.doc./12/8/99
cc:  (Off) Reading, COR/Bou, DOlson.,TGordon

949

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____X

UNITED STATES OF AMERICA                                    1:08- CR.- 35

                            Plaintiff

        -against-


JERRY L. BROOKS,

                            Defendant

_____X


## DEFENDANT JERRY L. BROOKS' MOTION TO DISMISS


        The Defendant Jerry L. Brooks, by the undersigned, his attorney, moves that the

indictment be dismissed on the following grounds:

1) That the indictment was not found within five years after the alleged offense was committed.
2) The indictment does not state facts sufficient to constitute an offense against the United States.
3) The indictment for the alleged offense was not contractually required.
4) All counts of the indictment should be dismissed pursuant to Federal Rules of Criminal Procedure 12 (b) (2)


I

STATEMENT OF FACTS

        The Defendant was indicted on January 7, 2008 on 11 counts of making false

representations in violation of Title 18, U.S.C. 1001(a)(2), 2 and 3551 et seq.  The

aforementioned crimes are alleged to have occurred on March 22, 2002.(See Exhibit "A")  At all

relevant times to the indictment, the Defendant was the President of ESU, Inc., a government

contractor, who provided armed and unarmed security guards for several federal office buildings in Suffolk and Nassau Counties, Long Island, New York.

The contract between ESU, Inc. and the General Services Administration (hereinafter referred to as "GSA") required that the security guards employed by ESU, Inc. have 20 hours of training from GSA and 83 hours of training from ESU, Inc. prior to each guard being approved by GSA to work under the contract. (See Exhibit "B", pp.I-C-26, paragraph 11A and pp.I-C-32 and 33). The contract required the contractor to certify on a form provided by GSA that each employee had completed the 83 hour training. The Defendant signed said form for each of the eleven named employees in the indictment on March 22, 2002 certifying that each employee had obtained the 83 hour training. Each guard could use successful examination results from another federal security contractor to comply with the requirements for employment with ESU, Inc.[See Exhibit "B", p. I-C-28, paragraph (4)]

The 83 hours of contractor training was on subjects covered in the GSA provided textbook titled "Contract Guard Information Manual. (See Exhibit "B", p. I-C-28, paragraph 3.) The 83 hours of contractor training became non-required independent training upon the submission of the alternative training plan and acceptance by the contracting officer. The contract allowed ESU, Inc. to submit to the contracting officer an alternative training plan and schedule for 26 hours of required training accepted and approved by the contracting officer. (See Exhibit "C", p. 3, Government Contract Experts Report, paragraph E.)

ESU, Inc. commenced working on the contract on February 1, 2000. ESU, Inc. inherited security guards from the previous contractor. GSA approved each of the security guards to commence work without receiving any hours of training. (See Exhibit "C", p. 3, Government

Contract Experts Report, paragraph F.)

The indictment in the instant case was returned and filed by the grand jury on January 7, 2008.

II.

## ARGUMENT AND CITATION OF AUTHORITY

### Statute of Limitations

The indictment alleges that Defendant Brooks on March 22, 2002 made false statements and representations to GSA in violation of 18 U.S.C. 1001(a)(2) and 2. The statute of limitations for this offense is five (5) years pursuant to 18 U.S.C. 3282(a). The indictment was returned by the grand jury and filed on January 7, 2008.

The statute of limitation on a substantive offenses begins to run on the date of the alleged offense. **US v. Sloan,** 389 F. Supp 526 (DC NY 1975) As it is explicitly stated under 18 U.S.C.A 3282 (a) "Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense,not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed". Statute of limitations is designed to protect individuals from having to defend themselves against charges when basic facts may have become obscured by passage of time and to minimize danger of official punishment because of acts in the far distant past. 18 U.S.C.A. § 3282. In the instant case, the statute of limitations started to run on March 22, 2002 and ended on March 21, 2007. The indictment was initially returned by the grand jury on March 22, 2007 but was subsequently dismissed for improper venue and filed one day after the statute of limitation expired. The government has again reindicted the defendant on January 7, 2008 but is still time barred by the Statute of Limitations to reindict presently as it was on the prior indictment that was filed one

day late on March 22, 2007. The law requires this Court to DISMISS this action against

Defendant Brooks.

III.

## ARGUMENT AND CITATION OF AUTHORITY

### Failure to State an Offense

The indictment alleges that Defendant Brooks

> ...unlawfully, willfully, and knowingly made **materially** false, fictitious and
> fraudulent statements and representations, to wit: Brooks falsely stated to the
> GSA in reports set forth below that the security officers had received specific,
> contractually-required training when, in fact, Brooks was aware that the security
> guards had not received the reported training.

ESU, Inc. was awarded the contract on August 3, 1999 and was given the notice to

letter dated December 8, 1999. (See Exhibit "D) ESU, Inc.'s contract covered providing security

officers for several federal office buildings. ESU, Inc. was required by the GSA contracting

officer to employ the security officers of the previous contractor. The contract required GSA to

provide each security officer 20 hours of training before the security officer could be employed

under the contract. ESU, Inc. was only required by the contract to provide each security officer

26 hours of training in accordance with the training plan and schedule approved by the GSA.

GSA did not provide their 20 hours of required training as stated in the contract at the

commencement of the contract. GSA did not require ESU, Inc. to provide their 83 hours of

required training as stated in the contract at the commencement of the contract. In other words,

the 83 hours of training was not **material** to the commencement of, or the entire contract.

The contract required each security officer to be tested on the subject matters of the 83

hour contractor training.  The examination was written by and administered by GSA. (See Exhibit "B", p. I-C-27, paragraph C).  Each of the 11 security officers listed on the indictment had passed the required examination prior to **March 22, 2002.**  In fact most of the officers had passed the examination over 6 months prior March 22, 2002.

All of the 11 security officers were pre-cleared by GSA to work for ESU, Inc. prior to GSA or ESU, Inc. providing the security officers any of the training required by the contract. GSA's approval of these security officers to commence work without the 20 hours of GSA training and the 83 hours of contractor training evidences the lack of materiality of the training.

18 U.S.C. 1001(a)(2) requires that the alleged false statement be **materially** false.  The issue of whether the statement is materially false is a question of law to be decided by the Court. **United States v. Bernard,** 384 F2d 915 (1967 CA2 NY) United States v. Marchisio, 344 F.2d 653, 665 (2 Cir. 1965); United States v. Ivey, 322 F.2d 523, 529 (4 Cir.), cert. denied, 375 U.S. 953, 84 S.Ct. 444, 11 L.Ed.2d 313 (1963). In the instant case, the indictment is founded upon 11 documents signed by Defendant Brooks that stated 11 of ESU, Inc. security officers had received the 83 hours of training on the subject matters covered on the GSA administered security guard examination.

Each of the 11 officers had passed the examination prior to the March 22, 2002 document being signed by Defendant Brooks.  The security officers' passing of the examination showed their proficiency in the matters covered by the independent training at the time of the signing of the March 22, 2002 document.  The passing of the examination showed that the security officers had been properly trained in the subject matters of the 83 hour training.  Therefore, the 11 documents signed by Defendant Brooks was not **material** to the contract as a matter of law.

....

There could not have been any intent to deceive or defraud GSA because each security officer

had already shown his proficiency in the materials through non required independent training.

IV.

ARGUMENT AND CITATION OF AUTHORITY

Indictment should be dismissed pursuant to Federal Rules of Criminal Procedure 12 (b) (2)

To convict the defendant of violating 18 U.S.C. § 1001(a)(2), the Government must prove
beyond a reasonable doubt each of the following five elements:

(1) that the defendant made a statement;

(2 ) that the statement was false and the defendant knew it was false;

(3) that the statement was made knowingly and willfully;

(4) that the statement was made within the jurisdiction of a federal agency; and

(5) the statement was material.

However, it is a defense to a charge of making a false statement in violation of 18 U.S.C. §
1001(a)(2) that the statement in question was "literally true." This is commonly referred to as the
**"Bronston"** defense. *Bronston v. United States, 409 U.S. 352* (1973)

The purpose of the *Bronston* rule is to place the burden on the examiner to probe for details
during the examination. The rule prevents an examiner from resolving ambiguities in the elicited
testimony with a perjury prosecution after the fact. United States v. Schafrick, 871 F.2d 300, 303
(2d Cir.1989). While Bronston involved a perjury prosecution, it is well settled that the "literal
truth" defense is also applicable to false statement prosecutions under U.S. vs. *Schafrick. United
States vs. Mandanici*, 729 F.2d 914, 921 (2nd Cir. 1984). As to the *Bronston* defense, it applies
either (1) where a defendant made a statement in response to a question that was ambiguous, or
capable of being understood in more than one way, and the answer given by the defendant to one
reasonable interpretation of the ambiguous question was not false; or (2) where a defendant made
a statement in response to a question that was clear and unambiguous, but the answer to the clear
question was ambiguous and capable of being understood in more than one way, and one
reasonable interpretation of the answer given by the defendant was not false. As long as a
statement or an answer to a question, or a reasonable interpretation of both statements and
answers, is literally or technically true, the crime of making a false statement in violation of 18
U.S.C. § 1001 has not been committed. In examining the statement alleged to be false, the
context in which the statement was purportedly made must be considered. Any words used

should be given their normal and customary meaning unless the context in which the words were used clearly shows that both the agent for the government and the defendant mutually understood that some other meaning was to be given to a word or words. If the statement in question was literally or technically true, then any intent on the part of the defendant to be ambiguous, to confuse, to evade, or even to mislead, is irrelevant and the defendant cannot be found guilty of violating 18 U.S.C. § 1001. Federal Jury Practice and Instructions § 50.12.

Here, the defendant moves to dismiss all eleven counts of the subject indictment pursuant to Federal Rule of Criminal Procedure 12(b)(2), which states, "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." The defenses and objections, covered by Rule 12(b)(2), which the defendant at his option may raise by motion before trial, include:

All defenses and objections which are capable of determination without a trial of the general issue. They include such matters as former jeopardy, former conviction, former acquittal, statute of limitations, immunity, lack of jurisdiction, failure of indictment or information to state an offense, etc. Such matters have been heretofore raised by demurrers, special pleas in bar and motions to quash.

Advisory Committee Notes to Federal Rules of Criminal Procedure, Rule 12, Note # 2. As the district court in United States v. Cassese, 273 F.Supp.2d 481 (S.D.N.Y.2003), explained with respect to a 12(b)(2) application:

Federal Rule of Criminal Procedure 12(b)(2) permits pre-trial consideration of any defense "that the court can determine without a trial of the general issue." In the instant case, the defendant knew to his understanding and knowledge that the statements he made were in fact "literally true" pursuant to the aforementioned exhibits B, C, & D. The Bronston defense necessarily involves factual issues, since a condition precedent to its consideration requires that some evidentiary foundation, however tenuous, be established at trial. United States v. Paul, 110 F.3d 869, 871 (2d Cir.1997); United States v. Kwong, 69 F.3d 663, 667 (2d Cir.1995); United States v. Bryser, 954 F.2d 79, 87 (2d Cir.1992). That is, the Bronston defense would come into play only if some evidence is introduced at trial that the alleged false statements of the defendant as referred to in the indictment, was made in response to a question that was ambiguous, or capable of being understood in more than one way, and that the alleged false statement was, in fact, literally true. United States v. Lighte, 782 F.2d 367, 375 (2d Cir.1986). Of course, any issue as to whether the question eliciting the alleged false statement was ambiguous, or capable of being understood in more than one way, resulting from the inability of law enforcement witnesses to recall exactly what was said, would have to be resolved against the Government. This is so because Bronston provides a "defense," which, once raised, must be disproven by the Government beyond a reasonable doubt. United States v. West, 666 F.2d 16, 18 (2d Cir.1981); United States v. Mitchell, 725 F.2d 832, 833 (2d Cir.1983); United States v. Thomas, 34 F.3d 44, 47 (2d Cir.1994).

In accordance with all of the grounds for the Motion to Dismiss given forthwith, the law requires this Court to DISMISS this action against Defendant Brooks.

This 1st day of May, 2008.

Richard D. Borzouye, Esq. (07-180943)
11 West 42nd Street, Suite 900
New York, NY 10036
(212) 938-1200
Fax (212) 768-2766
Email: Attorneyborzouye@gmail.com